1
2
3                      UNITED STATES DISTRICT COURT
4                           DISTRICT OF NEVADA
5                                 * * *
6   JEREMY GILPIN, *et al.*,                    Case No. 3:20-cv-00589-MMD-WGC
7                          Plaintiffs,                          ORDER
8           v.
9   CU CAPITAL MARKET SOLUTIONS, LLC,
    *et al.*,
10
                           Defendants.
11

12  **I.    SUMMARY**

13          Plaintiffs Jeremy Gilpin and Hardaway Capitol Group, LLC ("Hardaway") filed a

14  first amended complaint against Defendants CU Capital Market Solutions, LLC ("CU-

15  CMS") and Capital Markets Management Group ("CMMG") arising from events following

16  the conclusion of two bio refinery projects in Nevada. (ECF No. 14 ("FAC").) Before the

17  Court is Defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of

18  Civil Procedure. (ECF No. 23 ("Motion").)[1] Because the Court finds that it does not have

19  diversity jurisdiction over this action—and as further explained below—Defendants'

20  Motion is granted.

21  **II.   BACKGROUND**

22          The following facts are taken from Plaintiffs' FAC (ECF No. 14), unless noted

23  otherwise. Jeremy Gilpin is a resident of Nevada and a senior executive of Greater

24  Nevada Commercial Lending, LLC. (*Id.* at 2.) Gilpin is also the manager of Hardaway,

25  which is a limited liability company incorporated and has a principal place of business in

26  Nevada. (*Id.*) On the other hand, CU-CMS and CMMG are both Georgia limited liability

27

28
    ────────────────
          [1]The Court has additionally reviewed the parties' corresponding response and
    reply. (ECF Nos. 24, 28.)

1  companies. (*Id.* at 2-3.) CU-CMS is a credit union service organization located in

2  Kansas but also maintains an office in Georgia. (*Id.* at 2.) CMMG has a principal place

3  of business in Georgia. (*Id.* at 3.)

4       Plaintiffs invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332. (*Id.*)

5  Plaintiffs allege that for several years, numerous parties—including Defendants—have

6  been litigating in multiple forums "to stake their claims for fees stemming from two large

7  financing transaction" that Gilpin arranged regarding renewable energy projects in

8  Nevada. (*Id.* at 4.) Plaintiffs seek a declaratory judgement against Defendants, and

9  further alleges Defendants engaged in intentional interference with contractual relations

10  and intentional interference with prospective economic activity. (*Id.* at 18-22.) This

11  resulted in damages to Plaintiffs in excess of $75,000. (*Id.* at 18-22.)

12       Further relevant to this order, the parties do not dispute that CU-CMS includes

13  three credit unions: Jefferson Financial Credit Union ("Jefferson Financial"), Freedom

14  Northwest Credit Union ("Freedom Northwest") and SunState Federal Credit Union

15  ("SunState"). (ECF Nos. 23 at 9, 24 at 8.) These three credit unions are federally

16  chartered unions. (ECF No. 23 at 9.)

17       Plaintiffs state in their opposition that Jefferson Financial is "headquartered in

18  Metairie, Louisiana, with more than a dozen locations in south Louisiana" and that

19  "eligibility for membership in Jefferson Financial is limited only to certain counties and

20  parishes in Louisiana and Alabama." (ECF No. 24 at 8.) Defendants attached a

21  declaration to their reply from the Chief Executive Officer of Jefferson Financial

22  declaring that Jefferson Financial conducts business and makes loans in Louisiana and

23  Alabama, and that "15% of the revenues of Jefferson Financial is received from

24  business conducted outside of the state of Louisiana." (ECF No. 28-1 at 2-3.)

25       As to the remaining two credit unions, Plaintiffs assert in response to the Motion

26  that Freedom Northwest is located and operates in Idaho. (ECF No. 24 at 9.) SunState

27  operates and restricts its membership to Florida, where it is located. (*Id.*)

28  ///

1    III.    **LEGAL STANDARD**

2          Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") allows defendants

3    to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although

4    the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1),

5    the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the

6    burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor*

7    *Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*,

8    298 U.S. 178, 189 (1936)). Plaintiff's burden is subject to a preponderance of the

9    evidence standard. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

10          Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co.*

11    *v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a

12    particular case unless the contrary affirmatively appears. *See Stock W., Inc. v.*

13    *Confederated Tribes of Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation

14    omitted). "Because subject matter jurisdiction goes to the power of the court to hear a

15    case, it is a threshold issue and may be raised at any time and by any party." *Mallard*

16    *Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing FRCP

17    12(b)(1)).

18          Moreover, district courts have original jurisdiction over civil actions where the

19    matter is between citizens of different states and the amount exceeds $75,000. 28

20    U.S.C. § 1332(a)(1). Diversity jurisdiction exists when there is "complete diversity of

21    citizenship, *i.e.*, every plaintiff be a citizen of a different state from every defendant."

22    *Carpenter v. PNC Bank, N.A.*, 368 F. Supp. 3d 1339, 1344 (D. Haw. 2019) (citing

23    *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018)). Although corporations

24    are citizens of any state in which they are incorporated or have their principal place of

25    business, "an LLC is a citizen of every state of which its owners/members are citizens."

26    *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

27    ///

28    ///

3

1    **IV.    DISCUSSION**

2    Defendants argue this action should be dismissed because: (1) complete

3    diversity does not exist between the parties; (2) the amount in controversy does not

4    exceed $75,000; and the *Colorado River*[2] abstention doctrine applies to this action.

5    (ECF No. 23 at 8-14.) Because the issue of complete diversity proves to be dispositive,

6    the Court will address the parties' two arguments below with respect to this issue and

7    declines to resolve Defendants' remaining arguments.

8    **1)    Federally-Chartered Corporations**

9    Defendants assert the federally chartered credit unions of CU-CMS are not

10   considered citizens of any particular state, therefore complete diversity does not exist in

11   a dispute between a citizen of a state and a federally chartered credit union.[3] (ECF No.

12   23 at 8-10.) Plaintiffs counter that the citizenship of a federal chartered credit union

13   should be based on its principal place of business pursuant to 28 U.S. C. § 1332(c)(1)

14   as set forth in *Navy Fed. Credit Union v. LTD Fin. Servs.*, 972 F. 3d 344 (4th Cir. 2020).

15   (ECF No. 24 at 10-13.) As further support, Plaintiffs cite to *Lloyd v. Navy Fed. Credit*

16   *Union*, Case No. 17-cv-1280-BAS-RBB, 2019 WL 2269958 (S.D. Cal. May 28, 2019).

17   (*Id.* at 12.) While courts appear split on this issue, the Court agrees with Defendants.

18   In *Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp.*, the Ninth Circuit held there

19   was no subject matter jurisdiction under 28 U.S.C. § 1332 over Federal Savings and

20   Loan Insurance Corporation ("FSLIC") because the agency was an instrumentality of

21   the federal government and thus not a citizen of any state for the purposes of diversity.

22   492 F.2d 1325, 1329 (9th Cir. 1974). In reaching this conclusion, the Ninth Circuit relied

23   on *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 345 F. Supp. 885, 888 (S.D. Iowa 1972)

24   (holding that the Federal Deposit Insurance Corporation ("FDIC")—chartered by the

25   federal government—had no citizenship in any particular state thus no diversity of

26   citizenship existed). The rationale in both cases was that if the FSLIC and FDIC were

27   _____

28   [2] *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

     [3] The Court notes the parties due not dispute that CMMG is a diverse Defendant
     from Plaintiffs in this action. (*See* ECF Nos. 24 at 5-6, 28 at 5.)

1   citizens of the District of Columbia then almost every suit against it would be based

2   upon diversity jurisdiction, and this would have circumvented the intent of Congress to

3   limit the scope of jurisdiction over federally chartered corporations in 28 U.S.C. § 1349.

4   *Id.*; *Hancock*, 492 F.2d at 1329.

5        Here, CU-CMS is a limited liability company and a credit union service

6   organization. CU-CMS includes three federally chartered credit unions: Jefferson

7   Financial, Freedom Northwest, and SunState.[4] Thus, under *Hancock*, as federally

8   chartered credit unions, these entities have no citizenship in any particular state for

9   purposes of diversity jurisdiction.

10       Plaintiffs argue this Court should apply the *Navy Fed.*'s principal place of

11   business approach, pursuant to 28 U.S.C. § 1332(c)(1), to establish citizenship of the

12   federally chartered credit unions as Louisiana, Idaho, and Florida. (ECF No. 24 at 13.)

13   However, *Hancock* implicitly rejected application of the principal place of business

14   analysis to federally chartered entities. The Ninth Circuit, in holding the FSLIC is not a

15   citizen of any particular state for diversity purposes, explicitly noted the FDIC, as was

16   the FSLIC, was "also chartered by the federal government." *Hancock,* 492 F.2d at 1329.

17   Moreover, as the court in *Pierson v. Alaska USA Fed. Credit Union* articulated, if 28

18   U.S.C. § 1332(c) were to be read as permitting jurisdiction over federally-chartered

19   corporations based on their principal place of business, it "would contravene the

20   statute's primary purpose to reduce the caseload in the federal courts." Case No. 2:19-

21   cv-1685-RAJ, 2020 WL 747857, at *2 (W.D. Wash. Feb. 14, 2020) (citing S. Rep. No.

22   1830 (1983)). After it rejected the § 1332(c) argument, the *Pierson* court went on to find

23   

24       [4]The Court notes that Plaintiffs included in their response a brief reference to a case in the U.S. District Court for the District of Kansas whereby CU-CMS was a party. (ECF No. 24 at 4.) The reference seeks to highlight that Defendants asserted in that

25   case, upon a show cause order regarding diversity jurisdiction, CU-CMS's federal credit unions were not members of CU-CMS but rather "Unit Holders." (*Id.*) Plaintiffs fail to

26   provide much else in their response and it is unclear to the Court if Plaintiffs are seeking to factually attack that the federal credit unions are not members of CU-CMS as

27   Defendants allegedly argued in the Kansas case. Additionally, it is not clear to the Court whether Plaintiffs are arguing offensive collateral estoppel. As such, the Court declines

28   to address the issue further as it is Plaintiffs' burden to prove that the case is properly in federal court. *See McCauley*, 264 F.3d at 957.

1   that "federal credit unions are not considered citizens of any particular state for the
2   purpose of establishing diversity of citizenship." *Id. See also Broadbridge Fin. Sols., Inc.*
3   *v. CNBS, LLC*, Case No. 15 Civ. 4978 (PAC), 2016 WL 1222339, at *1 (S.D.N.Y. Mar.
4   23, 2016) (brackets and citation omitted) ("The general rule with respect to federal credit
5   unions is that . . . they are not considered to be citizens of any particular state for the
6   purpose of establishing diversity of citizenship.")

7          Because Plaintiffs do not dispute the federal credit unions of CMS are federally
8   chartered, and in light of *Hancock*'s rejection of the principal place of business
9   approach, the Court concludes that it lacks diversity jurisdiction over this action.

10                          **2)      Localized Exception**

11          Plaintiffs argue the general rule that federally chartered corporations are not
12   citizens of any state does not apply to CU-CMS because of the "localized exception."
13   (ECF No. 24 at 6-10.) Under this exception, Plaintiffs argue Jefferson Financial,
14   Freedom Northwest, and SunState are localized credit unions with limited geographical
15   presence respectively in Louisiana, Idaho, and Florida, and therefore complete diversity
16   exists in this action. (*Id.* at 9.) Defendants counter that at least one of CU-CMS's credit
17   unions—Jefferson Financial—does not have a limited presence. (ECF No. 28 at 6.) The
18   Court agrees with Defendants.

19          Plaintiffs quote *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg., Inc.*, 415 F.
20   Supp. 2d 636, 640 (E.D. Va. 2006) in their opposition to set forth the localized exception
21   rule. (ECF No. 24 at 7 ("a federally chartered corporation may be eligible for diversity
22   jurisdiction where its activities are sufficiently localized so that it may be deemed a
23   citizen of a single state.").) Plaintiffs subsequently state, "Jefferson Financial is
24   headquartered in Metairie, Louisiana, with more than a dozen locations in south
25   Louisiana" and that "eligibility for membership in Jefferson Financial is limited only to
26   certain counties and parishes in Louisiana *and Alabama*." (*Id.* at 8, 9 (emphasis
27   added).)
28   ///

1       Defendants attached a declaration to their reply from the Chief Executive Officer

2  of Jefferson Financial declaring that it conducts business and makes loans in Louisiana

3  and Alabama, and that "15% of the revenues of Jefferson Financial is received from

4  business conducted outside of the state of Louisiana." (ECF No. 28-1 at 2-3.) Because it

5  is undisputed that Jefferson Financial has a business presence outside of Louisiana—

6  specifically Alabama—its activities are thus not sufficiently localized and not the kind of

7  "peculiarly local" federally chartered credit union to warrant it be deemed a citizen of

8  one state for diversity jurisdiction. *See Feuchtwanger Corp. v. Lake Hiawatha Fed.*

9  *Credit Union*, 272 F.2d 453, 455 (3rd Cir. 1959) (exercising diversity jurisdiction over a

10  federal credit union with a "peculiarly local institution of a single community" in a state);

11  *see also Pierson*, 2020 WL 747857, at *2 (finding the localized exception did not apply

12  to a federal credit union with locations in three different states). Accordingly, and in

13  consideration of Jefferson Financial being federally chartered as discussed above, the

14  Court finds it does not have diversity jurisdiction over this action.

15  **V.   CONCLUSION**

16       The Court notes that Plaintiffs and Defendants made several arguments and

17  cited to several cases not discussed above. The Court has reviewed these arguments

18  and cases and determines that they do not warrant discussion as they do not affect the

19  outcome of the Motion.

20       It is therefore ordered that Defendants' motion to dismiss (ECF No. 23) is

21  granted.

22       The Clerk of Court is directed to enter judgment accordingly and to close this

23  case.

24       DATED THIS 10th Day of September 2021.

25

26                                _____

27                                MIRANDA M. DU
                                 CHIEF UNITED STATES DISTRICT JUDGE

28